UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NATIONAL WESTERN LIFE INSURANCE DEFERRED ANNUITIES LITIGATION | ) Civil No.05-CV-1018-JLS(WVG) ) ) ORDER ON JOINT STATEMENT ON ) DISCOVERY DISPUTE (DOC. NO. 216) ) DENYING NATIONAL WESTERN'S ) REQUEST TO TAKE LIMITED ) DEPOSITIONS OF ABSENT CLASS ) MEMBERS ) |

After meeting and conferring as required by local rule, the parties submitted to the Court a discovery dispute by joint statement (Doc. No. 216), which asks the Court to determine whether the defendant, National Western Life Insurance Company ("National Western"), may depose approximately twenty-five absent class members. The Court GRANTS National Western's request subject to the limitations below.

## I. BACKGROUND[1]

Named Plaintiffs are senior citizens who purchased deferred annuities from National Western. They allege National Western "orchestrated a nationwide scheme to target senior citizens and lure them into purchasing its high cost and illiquid deferred annuities." (Doc. No. 129-1 at 1.) "An annuity is a contract between an annuity owner . . . and an insurance company pursuant to which the annuity owner makes an upfront lump-sum payment or a series of payments to the insurance company. The insurance company, in turn, agrees to make payments to the annuity owner over a period of time." (Doc. No. 54 at

---

[1] The following background is adapted from Judge Sammartino's first class certification order. (See Doc. No. 176 at 2.)

¶ 17.) Where that annuity is "deferred," "the annuitant foregoes payment until some point in the future" and is "a longterm investment vehicle, not an up front income stream." (Id. at ¶ 18.) To sell these products, National Western contracts with National Marketing Organizations that "recruit[] and solicit[] sales agents." (Doc. No. 129-1 at 4.) Plaintiffs allege these sales agents received "exorbitant commissions" when they sold the complained-of annuities. (Id. at 5.) "At the core of [Defendant's] scheme" were misrepresentations and omissions regarding "the annuities' product spread (i.e., its costs and internal profits) and asset fee." (Id.) According to Plaintiffs, National Western misrepresented the nature of bonuses offered with some annuity products, and failed to disclose its agent commissions and overall corporate "plan . . . to increase the asset fee in renewal years." (Id. at 1–2.) Plaintiffs believe that these misrepresentations and omissions violate the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and several California state statutes.

Although this action has been certified as a class action, the parties continue to wrangle over class membership, and class action notices have yet to be sent out. National Western now seeks to conduct limited depositions of approximately twenty-five absent class members, who can be identified from National Western's records. National Western argues that, *inter alia*, it should be able to conduct depositions to "demonstrate that not only named plaintiffs but also absent class members (1) were not mislead [sic] by any claim of a bonus, and that their bonus was not 'illusory,['] and (2) that they did not care about the disclosure of any commission and knew full and well that their agent - as with all insurance agents - was receiving a commission in connection with the sale of the annuity product." (Doc. No. 216-1 at 3.)

The parties appeared before the Court for a settlement conference on November 15, 2010, during which time the Court also held an impromptu oral argument on the present dispute. At that time, Plaintiffs stressed they vehemently opposed depositions of absent putative class members before the class action notice has been sent out. However, Plaintiffs backed off of their original position that no depositions should be taken at all, provided that notice be sent out and the number and duration of depositions be limited. Plaintiffs further argued that depositions should be limited to only 5 to 8 deponents.[2/] Defendants reiterated their position and represented to the Court that their intent was not to

---

[2/] Given that the number of putative class members here is over 12,000 people, the Court finds this number is too small.

decertify the class action but to seek information on the merits of the case. The Court took the matter under submission and now resolves the dispute.

## II. LEGAL STANDARD

Discovery from absent class members is ordinarily not permitted. McPhail v. First Command Fin. Planning, Inc., 251 F.R.D. 514, 517 (S.D. Cal. 2008). "It is not intended that members of the class should be treated as if they were parties plaintiff, subject to the normal discovery procedures, because if that were permitted, then the reason [behind Rule 23(a)(1) of the Federal Rules of Civil Procedure] would fail." Fischer v. Wolfinbarger, 55 F.R.D. 129, 132 (W.D. Ky. 1971).

Nonetheless, in some instances, courts have allowed discovery of absent class members. Absent class members have been subject to discovery where the proponent sufficiently shows that (1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class; (2) the discovery is necessary; (3) responding to the discovery requests would not require the assistance of counsel or other technical advice; and (4) the discovery seeks information that is not already known by the proponent. Clark v. Universal Builders, 501 F.2d 324, 340-41 & n.24 (7th Cir. 1974).

## III. DISCUSSION

The Court first summarily determines that the discovery will not take undue advantage of the absent class members or reduce the class size because only those members who have not already opted out are subject to being deposed; the depositions will not require assistance because the deponents can testify based on their personal knowledge; and, Defendants do not already know the information they seek. The Court next decides the final question and finds discovery is necessary.

Defendants argue they need depositions to disprove Plaintiffs' theory of the case. Specifically, they seek to "demonstrate that not only named plaintiff but also absent class members (1) were not mislead [sic] by any claim of a bonus, and that their bonus was not 'illusory,['] and (2) that they did not care about the disclosure of any commission and knew full well that their agent – as with all insurance agents - was receiving a commission in connection with the sale of annuity products." (Doc. No. 216-1 at 3:19-24.) This information, they argue, is directly related to the two "most significant questions on [plaintiff's RICO] claim[, which] are (1) misrepresentations and (2) causation." (Id. at 1:2-3 (citing Judge Sammartino's Certification Order, Doc. No. 206 at 9:15-17) (first alteration in original).)

For purposes of this Order only, the Court agrees that the information Defendants seek may bear on the claims and defenses in this case. "In some [civil RICO] cases, reliance may be 'a milepost on the road to causation.'" Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004) (citing Blackie v. Barrack, 524 F.2d 891, 906 n.22 (9th Cir. 1975) and Forsyth v. Humana, Inc., 114 F.3d 1467, 1481 (9th Cir. 1997) (noting that the "class had to establish that they relied on misrepresentations in buying their insurance policies, and that these misrepresentations caused them a concrete financial loss.")). Defendants seeks to establish lack of reliance on the part of other class members since, they argue, the named class members themselves did not rely on their alleged misrepresentations. Whether Defendants' strategy will ultimately be successful is uncertain, and the Court has no opinion on the matter. However, the Court is unwilling to deny Defendants the opportunity to meaningfully defend themselves. The Court therefore finds that Defendants may take depositions, subject to the limitations below, of a limited number of absent class members because the information they seek may bear on this case.

## IV.  CONCLUSION

The Court GRANTS National Western's request to depose absent class members, subject to the following procedures and conditions:

(1) The depositions may not occur before notice has been sent to putative class members, and then only after the time to opt out has expired;

(2) No more than sixteen (16) depositions may be taken;

(3) Under no circumstances may any single deposition exceed two (2) hours;

(4) Depositions shall be limited to no more than four (4) major metropolitan areas;

(5) Upon expiration of the opt out period, Defendants may select sixty-four (64) putative class members who meet all of the requirements of the class, and shall e-mail the list to all Plaintiffs' counsel; and

///
///
///
///
///
///

(6) Upon receiving the list of potential deponents, Plaintiffs' counsel, at their sole discretion, shall select sixteen (16) deponents (with the intent that these 16 deponents should be spread evenly across the four metropolitan areas) and notify Defendants' counsel by e-mail within twenty-one (21) days of receiving Defendants' list.

IT IS SO ORDERED.

DATED:  November 19, 2010

Hon. William V. Gallo
U.S. Magistrate Judge