UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: NATIONAL WESTERN LIFE INSURANCE DEFERRED ANNUITIES LITIGATION | Civil No. 05-CV-1018-AJB(WVG)<br><br>ORDER ON DISCOVERY DISPUTE REGARDING TAKING OF APEX DEPOSITIONS |

Plaintiffs seek to depose Robert L. Moody and Ross R. Moody, two top executives at National Western Life Insurance Company. However, because these gentlemen are at the "apex" of National Western, Defendant objects to their depositions. After the parties asked the Court to resolve this dispute, the Court ordered letter briefs and held an informal telephonic hearing on the record. Mssrs. Moody also submitted follow-up declarations and Plaintiffs submitted a response letter-brief. Needless to say, both sides have had ample opportunity to make their case. The Court fully under-stands the respective arguments, the issues, and finds that no further briefing or arguments are necessary. Having considered the parties' letter briefs, declarations, and oral arguments, the Court

ORDERS that Robert Moody and Ross Moody submit to deposition on or before April 25, 2011.

## I. LEGAL STANDARD

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Keith H. v. Long Beach Unified Sch. Dist., 228 F.R.D. 652, 655-56 (C.D. Cal. 2005) (citation omitted); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

However, the Court also has discretion to limit discovery and impose restrictions where the discovery sought "is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(1). "It is very unusual, however, for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances, as such an order would likely be in error." Salter v. Upjohn, 593 F.2d 649, 651, 651 (5th Cir. 1979).

When a party seeks to take the deposition of an official at the highest level or "apex" of a corporation, the Court may exercise its authority under the federal rules to limit discovery. Fed. R. Civ. P. 26(b)(1); see also WebSideStory, Inc. v. NetRatings, Inc., 2007 U.S. Dist. LEXIS 20481, *6 (S.D. Cal. Mar. 22, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed, that such discovery creates a tremendous potential for

abuse or harassment.") (citing <u>Mulvey v. Chrysler Corp.</u>, 106 F.R.D. 364 (D. R.I. 1985).

When determining whether to allow an apex deposition, courts often consider: (1) whether the high-level deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case, <u>First United Methodist Church of San Jose v. Atl. Mut. Ins. Co.</u>, 1995 U.S. Dist. LEXIS 22469, *6 (N.D. Cal. 1995), and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees, see <u>Salter</u>, 593 F.2d at 651 (granting protective order for executive where plaintiff had sought to depose the president of the company before deposing lower level executives; <u>Baine v. Gen. Motors Corp.</u>, 141 F.R.D. 332, 334-36 (M.D. Ala. 1991) (granting protective order for Vice President of General Motors where plaintiff had failed first to depose lower level employees). When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit the deposition. <u>See, e.g.</u>, <u>Thomas v. Int'l Bus. Machs.</u>, 48 F.3d 478, 482 (10th Cir. 1995); <u>Lewelling v. Farmers Ins. of Columbus, Inc.</u>, 879 F.2d 212, 218 (6th Cir. 1989); <u>Salter</u>, 593 F.2d at 651. However, when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition. <u>Rolscreen Co. v. Pella Prods. of St. Louis, Inc.</u>, 145 F.R.D. 92, 98 (S.D. La. 1992) (quoting <u>Digital Equip. Corp. v. Sys. Indus., Inc.</u>, 108 F.R.D. 742, 744 (D. Ma. 1986)); <u>see also</u> <u>Anderson v. Air W., Inc.</u>, 542 F.2d 1090, 1092-93 (9th Cir. 1976) (plaintiffs may depose sole stockholder who "probably had some knowledge" regarding substance of plaintiffs' claims); <u>Blankenship</u>,

519 F.2d at 429 (district court erred in granting protective order ordering plaintiff not to depose Herald-Examiner's publisher when plaintiff suggested possible information publisher might have that others did not); Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 102-06 (S.D.N.Y. 2001) (compelling deposition of CEO of Sony Corporation when plaintiff "presented sufficient evidence to infer that [CEO] had some unique knowledge on several issues related to its claims").

Generally, a claimed lack of knowledge on behalf of the deponent does not alone provide sufficient grounds for a protective order. Digital Equip. Corp., 108 F.R.D. at 744; Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 122 (D. Conn. 1974); Travelers Rental Co., Inc., 116 F.R.D. 140, 143 (D. Mass. 1987). Moreover, the fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984).

## II.  DISCUSSION

Chief Executive Officers and other apex-type executives are certainly not beyond the reach of the litigation process. As an apt illustrative example, the Northern District of California recently ordered Steve Jobs, the CEO of Apple Inc. and arguably the apex of all apexes, to sit for deposition. If Steve Jobs must sit for deposition, no CEO is *ipso facto* immune from deposition in the Court's mind. The Court turns to whether Ross and Robert Moody must submit to deposition under the facts of this case.

Plaintiffs argue that Robert Moody, as Chairman of the Board and CEO, and Ross Moody, as President and COO, were intimately involved in the minute details of the financial instrument at the

core of their case against National Western. As a result, both men potentially orchestrated and set the interest rate structure and commission system that are Plaintiffs' main focus. And although others may have been involved in structuring the annuities, the Moody gentlemen, as possible prime architects, have unique information about the annuities and commission plan. When the Court inquired why Plaintiffs needed to depose Ross and Robert Moody, counsel explained:

> Counsel admitted, he said, the operations that they [Ross and Robert Moody] run. They are the guys. They are the heads. They are the ring leaders, so to speak. And we've shown that even though we have taken other depositions, what we can't do, without taking these depositions, is we can't get there in that room when the Moody's [sic] were together and they made these decisions, and we need to ask them, what was the bases for that decision? Why did you make that decision? What was it you were trying to accomplish when you set these crediting rates? Were you trying to take money back from the very annuitants that you said you were giving a bonus to? Were you taking money out of the back pocket after you led them to think they were getting money up front? What was the point of how you worked the commissions? Why did you do it that way? What knowledge did you have? And at the end of the day, they say they are not going to call these witnesses at trial. Well, maybe they won't. That's their prerogative. But it's also our prerogative, since it is such a small company by relative standards, since we are talking about the very conduct that they themselves engaged in, the very rates that they themselves manipulated, the very decisions that they themselves made, we may want to call them as on cross. And it's prejudicial to us to put us in that position without first, at least, knowing what they are going to say.
> So, we wouldn't do this lightly. This is not an effort to just go ahead and willy-nilly take the CEO's deposition or the depositions of people at the very top of the chain. We are at this juncture because the other witnesses basically led us up that chain. . . . . These are hands-on management actions, and we needed to get into their heads. We needed to depose the schemers behind the scheme, if I can say it in that vein, and to not be allowed to do that, I think, is prejudicing us.

(Hearing Transcript, Doc. No. 252 at 13-15.)

1          Plaintiffs represented to the Court that they <u>have</u> deposed
2    other National Western employees, but that all roads lead to Ross
3    and Robert Moody.  They believe that these gentlemen actually set
4    the interest rates for some products, or at least have the ultimate
5    authority to approve those rates.  Moreover, both men attend Board
6    of Directors meetings, which other deponents have not been privy to.
7    Ross Moody was or is the head of marketing and has a prominent role
8    in the company's sales conferences and strategy.  Both gentlemen
9    develop new products and set the corporate culture.  Plaintiffs aver
10   they need to depose these gentlemen in part to obtain information on
11   their Racketeer Influenced and Corrupt Organizations Act claim.
12         Defendant counters that, even if Robert and Ross Moody have
13   the information Plaintiffs seek, other individuals have identical
14   knowledge and are more appropriate.  In response to Plaintiffs'
15   counsel's explanation above, Defendant's counsel stated:
16   "[O]verwhelmingly the statements made by Mr. Basser about the
17   knowledge of the Moody's [sic] just aren't true.  And I know I can't
18   prove that today, but however this develops that will be provable."
19   (Hearing Transcript, Doc. No. 252 at 15.)
20         As far as proffer of undue hardship goes, Ross and Robert
21   Moody submitted declarations that set forth the days they are
22   unavailable in April and essentially declare not to have unique or
23   non-repetitive knowledge or that they simply lack knowledge about
24   the information Plaintiffs seek.  However, the Court finds Defen-
25   dant's argument that Ross and Robert Moody lack knowledge about
26   Plaintiffs' proposed topics unpersuasive.  If these gentlemen in
27   fact do not have the requisite knowledge, that is something
28   Plaintiffs are entitled to explore and discover on their own.  The

entire purpose of a deposition is to determine what the deponent does and does not have knowledge about. Moreover, the two declarations reflect many days in April when both men <u>are</u> <u>available</u> for deposition.

The Court finds Plaintiffs' arguments persuasive. It appears that Plaintiffs have exhausted other avenues before coming to this point, and it further appears that Plaintiffs' other efforts have led them here. <u>See</u> <u>Kennedy v. Jackson Nat'l Life Ins. Co.</u>, 2010 U.S. Dist. LEXIS 47866, *2 (N.D. Cal. Apr. 22, 2010) ("[W]here the testimony of lower level employees indicates that the apex deponent may have some relevant personal knowledge, the party seeking protection will not likely meet the high burden necessary to warrant a protective order.").

The Court is also informed by National Western's structure and the Moody family's intimate involvement in the company's operations. As National Western itself explains:

> Ross R. Moody . . . , the President and Chief Operating Officer and a director of the Company, is the son of Robert L. Moody and the brother of Russell S. Moody and Frances A. Moody-Dahlberg. Frances A. Moody-Dahlberg . . . , an employee and director of the Company, is the daughter of Robert L. Moody and the sister of Ross R. Moody and Russell S. Moody. E. Douglas McLeod . . . , a director of the Company, is the brother-in-law of Robert L. Moody. Russell S. Moody . . . , a director of the Company, is the son of Robert L. Moody and the brother of Ross R. Moody and Frances A. Moody-Dahlberg.

National Western Life Insurance Co. Notice of Annual Meeting of Stockholders and Proxy Statement For 2010 Annual Meeting of Stockholders at 12, available at https://www.nationalwesternlife.com/pdf/SH-1005.pdf. In other words, with so many Moody family members at the company's helm, Plaintiffs' argument that Ross and

Robert Moody are more than mere overseers appears to have some merit.[1]

On balance, the Court finds that Plaintiffs have made a sufficient showing to establish their need to depose Ross and Robert Moody. The Court takes counsel at his word that he does not seek to depose Ross and Robert Moody for an improper purpose and finds that these gentlemen are more likely than not to possess unique, discoverable information. This conclusion is based on Plaintiffs' counsel's explanation of the role the gentlemen potentially played with respect to the subject matter of this case, as well as the apparently centralized nature of the decision-making processes at National Western. On balance, the Court finds that Messrs. Moody likely take a more active role in the company's operations and the subject areas which Plaintiffs which to explore. The Courts finds that the likelihood that Messrs. Moody will have more specific knowledge is high. See Kennedy, 2010 U.S. Dist. LEXIS 47866 at *1 ("[J]ust because another witness has testified regarding the same facts does not mean such testimony would be repetitive.").[2]

Regardless of whether Plaintiffs' counsel is ultimately proven wrong at deposition, the above representation is his current

---

[1] On balance, though, these facts play a minor role in the Court's ruling.

[2] In a letter that sought leave to respond to Plaintiffs' most recent 5-page response, Defendants seem to suggest that Plaintiffs bear the burden to show "good cause" to take the depositions. (Doc. No. 261 at 1 ("National Western believes that Plaintiffs have not shown good cause to take the depositions of both apex deponents, let alone one of them.").) "Good cause," used by attorneys in courts, is a term of art that has been loosely thrown around in this case by both sides when it does not apply. That term has a certain meaning and is invoked when statutory or case law specifically provides for it. It certainly does not apply here, and even if it did, the burden is on Defendants to show why the depositions should not be taken, not the other way around. The burden under the apex principle is supplied by the general rule applicable to a party that seeks to avoid discovery in general. The apex deposition principle is not an automatic bar that Plaintiffs must overcome by a showing of good cause. Rather, it is a protective tool that is selectively employed on a case by case basis when deemed appropriate.

understanding and his clients are entitled the opportunity to test that theory at deposition; that is the entire purpose of discovery. Fed. R. Civ. P. 26 advisory committee notes on 1946 amendments[3] ("The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."); see United States v. Procter & Gamble, 356 U.S. 677, 683 (1958) (explaining that the purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible."); Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute."). There simply is little basis for the Court to take the extraordinary step of denying Plaintiffs the opportunity to take these depositions. Even if National Western never calls Ross and Robert Moody at trial, they likely possess discoverable information to which Plaintiffs are entitled now.

### III.   CONCLUSION

The Court denies Defendant's request to insulate Ross Moody and Robert Moody from the deposition process. In accordance with Federal Rule of Civil Procedure 30(d), Ross Moody and Robert Moody are each ordered to submit to one, 7-hour maximum deposition no later than April 25, 2011. To accommodate the gentlemen's schedule, the Court further orders that their depositions may take place on any weekend day, if necessary. Counsel for both sides shall

---

[3] The Court notes that while Rule 26 was subsequently amended to grant broader authority to courts to narrow the scope of discovery, this 1946 advisory committee note on the general spirit of discovery continues to hold true today.

1 | cooperatively meet and confer to schedule the depositions, which
2 | shall take place in the city in which National Western's corporate
3 | headquarters is located.
4 | IT IS SO ORDERED.
5 | DATED:  April 6, 2011

_____
Hon. William V. Gallo
U.S. Magistrate Judge