UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re NATIONAL WESTERN LIFE INSURANCE DEFERRED ANNUITIES LITIGATION. | Case No.: 05cv1018 AJB (WVG) |
| | Order Denying Motion for Summary Judgment and Denying As Moot Motion to Exclude the Declaration of Craig Merrill |
| This Document Relates to: | [Doc. Nos. 241 and 274] |
|     ALL ACTIONS. | |

Defendant, National Western Life Insurance Company, ("NWL") filed a motion for summary judgment. (Doc. No. 241.)  The Plaintiffs' filed an opposition, (Doc. No. 273), and Defendant's filed a reply, (Doc. No. 283).  The Plaintiffs' also filed a motion to exclude the declaration of Craig Merrill filed in support of NWL's motion for summary judgment. (Doc. No. 274.)  NWL filed an opposition to Plaintiffs' motion to exclude, (Doc. No. 285), and the Plaintiffs filed a reply, (Doc. No. 287). Based upon the parties moving papers and for the reasons set forth below, NWL's motion for summary judgement is DENIED and Plaintiffs' motion to exclude the declaration of Craig Merrill is DENIED.

///

///

///

///

1

## *Background*

### *I. Factual Background*

#### *A. Parties*

Defendant, NWL, is a Colorado corporation headquartered in Texas.  NWL sells deferred annuities on a national basis through a network of sales agent organizations and individual sales agents, including defendants Centre Point Advisors, Inc. ("Centre Point") and Advanced Business Strategies Institute ("ABSI").  Both Centre Point and ABSI have defaulted in this action, and only NWL brings the present motion.

The named Plaintiffs are Warren Petry of El Cajon, California; Mr. and Mrs. Peter and Mary Glenane of Vista, California; Mary Sweeney of San Diego County, California; and George Miller of Kingston, Pennsylvania (collectively "Plaintiffs"). Each of the Plaintiffs is at least 68 years old.  With the exception of plaintiff Miller, Plaintiffs purchased NWL annuities wholly in California.  Plaintiff Miller purchased his NWL annuity in Pennsylvania.

The Court appointed two of the named Plaintiffs – George J. Miller and Marie N. Sweeney – to serve as representatives for the Class claims, and indicated that the claims of Mr. and Mrs. Glenanes and Mr. Petry would proceed on an individual basis (Dkt. No. 206, Order Granting Plaintiffs' Renewed Motion for Class Certification at 1.)

#### *B.  Summary of the Case*

This case involves the purchase and sale of deferred annuities to senior citizens. NWL develops, markets, and sells life insurance and annuity products[1] across the United States.  Plaintiffs allege that Defendants have engaged in a scheme to defraud Plaintiffs and other seniors into purchasing deferred

---

[1] The CAC alleges that:

> An annuity is a contract between an annuity owner (or "annuitant") and an insurance company pursuant to which the annuity owner makes an upfront lump-sum payment or a series of payments to the insurance company. The insurance company, in turn, agrees to make payments to the annuity owner over a period of time.  With a standard or "immediate" annuity, the annuitant has a right to a stream of income via payments from the insurance company that is usually guaranteed to last for as long as the annuitant is alive . . . . With a deferred annuity, the annuitant forgoes payment until some point in the future. . . .  Thus, deferred annuities are very different from immediate annuities and provide a long-term investment vehicle, not an up front income stream. CAC ¶¶ 17-18.

annuities that were not appropriate for them. The Plaintiffs contend that these annuities are inappropriate for the class[2] because they would not mature until well after the annuitants' expected life span. Therefore, Plaintiffs will either never receive any payments from their annuity policies, or be forced to access the annuity principal prematurely and incur substantial surrender charges as a result.  Plaintiffs contend that Defendants also fail to adequately disclose material information on the risks associated with deferred annuities so that Plaintiffs may make an informed buying decision.  Finally, the Plaintiffs contend that NWL fraudulently manipulated the terms of the annuities after purchase in order to erode Plaintiffs' returns on them.

### C. Defendants' Products

The certified class includes four annuities: the Confidence Flex 45, the Confidence Flex 85, the Benefit Assurance, and the Future Assurance. The two Confidence Flex annuities were introduced in or about 1998. Merrill Decl., ¶ 8. Purchasers of the Confidence Flex 45 deferred annuity receive a 4% bonus at the time of purchase, and purchasers of the Confidence Flex 85 deferred annuity receive an 8% bonus. *Id.* Despite the two annuities' different bonuses, from 1998 until November 2009, the first-year interest rates for both products were identical.[3] *Id.*

---

[2] National RICO Class is CERTIFIED in full as follows:
Nationwide Class: Any senior citizen, excluding defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as the immediate family members of such persons, who within the applicable statute of limitations of the date of the commencement of this action, purchased one or more of the relevant National Western Life Insurance Company deferred annuities either directly, or through the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy.

The California Class is CERTIFIED as to all claims except breach of fiduciary duty as follows:
California Class: Any California senior citizen, excluding defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as the immediate family members of such persons, who within the applicable statute of limitations of the date of the commencement of this action, purchased one or more of the relevant National Western Life Insurance Company deferred annuities either directly, or through the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy.

[3] Since November 2009, there has been some difference in introductory rates, but that difference has never exceeded 0.30%. Merrill Decl., ¶ 8. Similarly, the interest rates from year two forward on the two Confidence Flex annuities have also been identical from 1998 until November 2009. Merrill Decl., ¶ 9. Indeed, National Western's crediting methodology ensured that where the first year crediting rates of the two Confidence Flex annuities were identical, all subsequent rates have been identical. *Id.*

1    National Western introduced the Benefit Assurance and Future Assurance deferred annuities in

2    or about 2005. Merrill Decl., ¶ 10. The Benefit Assurance pays a 5% bonus, and the Future Assurance

3    pays a 10% bonus. *Id.* The credited interest rates, for both the first year and in subsequent years, have

4    always been identical for both Assurance annuities. *Id.*

5    ***II. Procedural Background***

6    The operative pleading in this case is the Consolidated and Amended Complaint ("CAC"), Doc.

7    No. 54, which was filed on June 15, 2006 and contained nine causes of action.  The Defendants filed a

8    motion to dismiss, Doc. No. 59, on July 27, 2006, which was granted-in-part and denied-in-part by this

9    Court in an Order issued on December 7, 2006, Doc. No. 71.  The Court dismissed:1) the Plaintiffs

10   claims under §1962(a) of Racketeer Influenced and Corrupt Organizations Act ("RICO"); 2) the

11   Plaintiffs claims for breach of the duty of good faith and fair dealing, and; 3) Plaintiff Miller's claims

12   under sections 17200 and 17500 of the California Business and Professional Code.

13   The Plaintiffs' moved for class certification on April 20, 2009, Doc. No. 129, which was denied

14   in an Order issued by the Court on January 11, 2010, Doc. No. 176.  The Plaintiffs filed an amended

15   motion to certify the class, Doc. No. 177, which was granted-in-part and denied-in-part in this Court's

16   Order of July 12, 2010, Doc. No. 206.  The National RICO Class[4] was certified in full and the California

17   Class[5] was certified as to all claims except breach of fiduciary duty.  Plaintiffs' breach of fiduciary duty

18   and aiding and abetting breach of fiduciary duty class claims were not certified. *See* Doc. No. 206, at 19-

19   20.

---

22   [4] The Nationwide Class was defined as any senior citizen, excluding defendants and their
directors, officers, predecessors, successors, affiliates, agents, co-conspirator and employees, as well as
the immediate family members of such persons, who within the applicable statute of limitations of the
date of the commencement of this action, purchased one or more of the relevant National Western Life
Insurance Company deferred annuities either directly, or through the surrender (in whole or part) of an
existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life
insurance policy.

26   [5] The California Class was defined by the Court as any California senior citizen, excluding
defendants and their directors, officers, predecessors, successors, affiliates, agents, co-conspirator and
employees, as well as the immediate family members of such persons, who within the applicable statute
of limitations of the date of the commencement of this action, purchased one or more of the relevant
National Western Life Insurance Company deferred annuities either directly, or through the surrender
(in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an
existing permanent life insurance policy.

NWL filed a motion for summary, Doc. No. 104, on October 31, 2008.  NWL's motion sought summary judgment on the issue of whether or not the Plaintiffs' pled sufficient facts in the CAC to establish that NWL, its NMOs and the sales agents share a "common purpose," arguing that "independent businesses and competitors cannot share a common purpose.  The Court's Order of June 16, 2009, Doc. No. 104, denied NWL's summary judgment motion, finding that competition among NMOs and among agents was not a barrier to finding that those same NMOs and agents share a common purpose with NWL. On March 4, 2011, NWL filed the instant motion for summary judgment, Doc. No. 241.

### *Legal Standard*

### *I. Summary Judgment*

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry its burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. However, the court must draw any factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### *Discussion*

NWL moves for summary judgment on: (1) Plaintiffs' RICO claims; and (2) Plaintiffs' state law claims.

### *I. Plaintiffs' RICO Claims*

Plaintiffs allege RICO violations pursuant to 18 U.S.C. §§ 1962(b), (c) and (d), the essential elements of which are (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. *Stanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C § 1961(4). "Racketeering activity" is defined as certain criminally indictable acts, including mail and wire fraud. *Id. § 1961*(1).

A further requirement of the Plaintiffs RICO claims is that the Plaintiffs must demonstrate an injury to "business or property by reason of a violation of section 1962. 18 U.S.C. § 1964(c). The statute's "by reason of" language requires proof of "but for" causation, proximate causation, and a concrete financial loss to a protectable business or property interest. *See Hemi Group, LLC v. City of New York*, – U.S. – , 130 S.Ct. 983, 989, 175 L.Ed.2d 943 (2010).

The racketeering activities upon which Plaintiff relies are the federal offenses of wire fraud and mail fraud. "A wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2008) (internal quotation marks omitted); 18 U.S.C. § 1343. A violation of the mail fraud statute requires proof that the defendant (1) formed a scheme to defraud, (2) used the mails to further the scheme, and (3) specific intent to deceive or defraud. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir.2004).

The wire and mail fraud statutes apply to non-disclosures, as well as to affirmative misrepresentations. *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir.1986). A "non-disclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged." *Id.* (quoting *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir.1984), *rev'd on*

1    *other grounds*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985)). "This independent duty may exist

2    in the form of a fiduciary duty to third parties, or may derive from an independent explicit statutory duty

3    created by legislative enactment." *Benny*, 786 F.2d at 1418 (citations omitted). A duty may also arise if

4    a defendant presents a half-truth that requires the disclosure of information to prevent the earlier

5    statement from being misleading. *See United States v. Woods*, 335 F.3d 993, 998 (9th Cir.2003).

6         NWL argues that it is entitled to summary judgment on the Plaintiffs' RICO claims because

7    Plaintiffs have failed to demonstrate the necessary elements of their  mail and wire fraud claims, which

8    include: (1) the formation of a scheme or artifice to defraud; (2) the use of the United States mail or wire

9    in furtherance of the scheme;[6] and (3) specific intent to deceive or defraud. *Odom v. Microsoft Corp.*,

10   486 F.3d 541, 554 (9th Cir. 2007).  NWL argues that the Plaintiffs cannot prove that it engaged in

11   racketeering activity because the Plaintiffs' have provided  no evidence of either: 1) a scheme or intent

12   to defraud; or (2) that any of the alleged predicate acts caused Plaintiffs' injury.

13        ***A. Evidence of a Scheme or Intent to Defraud***

14        Plaintiffs' claim that NWL engaged in racketeering activity by committing various acts of mail

15   and wire fraud under 18 U.S.C. §§1341, 1343. Under §1341, the taking of money through "false or

16   fraudulent pretenses, representations, or promises" constitutes a scheme to defraud under RICO. The

17   Plaintiffs' argue that the evidence[7] establishes that NWL orchestrated a scheme to target and defraud

18   seniors by systematically misrepresenting the core features and costs of its annuities - that these

19   annuities featured a "premium bonus" and had "No Upfront Sales Charges or Policy Fees." *See* Doc. No.

20   273, at 11-12.

21        NWL argues that Plaintiffs' RICO claim is limited to two theories: (1) NWL failed to disclose to

22   Plaintiffs that it paid the sales agents commissions for selling plaintiffs' annuities and (2) National

23   Western failed to disclose that it intended to at least break even on Plaintiffs' bonus annuities over the

24   life of each annuity by, among other things, recouping the cost of the bonus paid to Plaintiffs. *See* Doc.

25   No. 177, at 15-16. NWL argues that both of these theories fail to demonstrate that NWL implemented a

26   _____

27        [6] National Western does not dispute its use of mail and wire in this case. Ex. 53, NWL Response to 2nd RFAs, Nos. 19-22.

28        [7] The Plaintiff's evidence includes NWL's actuarial and pricing documents, as well as the testimony of Mr. Facey.

1   scheme to defraud or intended to commit fraud as required to prove a RICO claim.  NWL argues that it

2   had no fiduciary or statutory duty to disclose commissions paid to its independent sales representatives

3   and has presented no "half-truths" in its disclosures relating to commissions.

4        Ordinarily, there is no duty "to disclose pricing information during arm's-length contract

5   negotiations," including "no special duty in the relationship between an insurer and a potential insured."

6   *Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*, 62 Cal.App.4th 1166, 1173, 73

7   Cal.Rptr.2d 182 (Cal.Ct.App.1998). However, "[p]roof of an affirmative, material misrepresentation

8   supports a conviction of mail fraud without any additional proof of a fiduciary duty." *United States v.*

9   *Benny*, 786 F.2d 1410, 1418 (9th Cir.1986).

10       The Court finds NWL's argument that there was no affirmative duty to disclose the commissions

11  it paid unavailing because a rational jury could determine that NWL's sales materials affirmatively

12  misrepresented the annuities' "bonus" feature and purported lack of "sales charges." Such affirmative

13  misrepresentations would give rise to a duty to fully disclose all material facts necessary to make full

14  and complete disclosure. That is, even though NWL may not have had a separate duty to disclose what

15  costs factored into its annuity pricing, "where one does speak he must speak the whole truth to the end

16  that he does not conceal any facts which materially qualify those stated." *Iorio*, 2008 U.S. Dist. LEXIS

17  118344, at *49–*50 (quoting *Vega v. Jones, Day, Reavis & Pague*, 121 Cal.App.4th 282, 292, 17

18  Cal.Rptr.3d 26 (Cal.Ct.App.2005)).

19       The Court finds NWL's reliance on *Kennedy,* and a number of other cases,[8] is misplaced because

20  those cases are factually distinguishable from the present case. In contrast to this case where Plaintiffs

21  have cited sufficient evidence of affirmative misrepresentations, the plaintiff's claims in *Kennedy* were

22  based primarily on alleged omissions in the defendant's annuity contracts rather than affirmative

23

24

25  ───────────────

26       [8] NWL relies upon a number of cases for the assertion that the plaintiffs somehow got what they paid for" when they purchased NWL's annuities, however, these out-of-circuit cases are not binding or

27  persuasive authority, as they are easily distinguishable from the instant case. *See Phillips v. Am. Int'l Group*, 498 F. Supp. 2d 690 (S.D.N.Y. 2007); *Delaney v. Am. Express Co.*, No. 06-5134 (JAP), 2007 U.S. Dist. LEXIS 34699 (D.N.J. May 11, 2007); *Sayer v. Lincoln Nat'l Ins. Co*, No. 7:05-CV-1423-

28  RDP, 2006 U.S. Dist. LEXIS 96126 (N.D. Ala. Oct. 12, 2006); *Cirzoveto v. AIGAnnuity Ins. Co.*, 625 F. Supp. 2d 623 (W.D. Tenn. 2009).

misrepresentations in sales materials.[9] 2010 WL 4123994, at * 11. Finally, unlike here, the defendant in *Kennedy* disclosed in bold print on the front page of its annuity contracts that the interest rate on bonus annuities in subsequent years will be lower than the interest rate on non-bonus annuities. *Id.* at * 11. Based upon the foregoing, the Court finds that a rational jury could determine that NWL's sales materials affirmatively misrepresented the terms of its annuities.  This constitutes a genuine dispute of material fact which precludes summary judgment.

### B. No Evidence of Causation or Injury

An injury "by reason of" a RICO violation requires plaintiffs "to show that a RICO predicate offense 'not only was a 'but for' cause of [their] injury, but was the proximate cause as well.' " *Hemi Group*, 130 S.Ct. At 989 (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006).

NWL argues that Plaintiffs' cannot present any evidence of proximate cause or injury based on NWL's purported omissions relative to commissions or bonuses because the Plaintiffs admit that they did not rely on the misrepresentations at issue.[10] The Court finds this argument unpersuasive in light of *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008).  In Bridge, the Supreme Court held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged

---

[9] Insofar as the plaintiff alleged an affirmative misrepresentation in a newspaper advertisement, the *Kennedy* court noted that the plaintiff had failed to provide any evidence that any sales representative used the advertisement or that plaintiff had even seen the advertisement. *Id.* at *9.

[10] NWL presented similar arguments to Judge Sammartino on the renewed motion for class certification. Judge Sammartino reasoned that the snippets of deposition testimony relied on by National Western were far from clear finding: 1) Plaintiff Sweeney's deposition is not sufficiently clear to allow it to override the directly on point sworn declaration; 2) At the time of purchase, Mr. Miller attested that he read and understood defendant's materials. In those materials were representations regarding a bonus. The fact that he did not recall his bonus six years later does not serve to disprove that at the time of the purchase he relied on the representations contained in defendant's materials; 3) Mr. Miller and Ms. Sweeney clearly stated that, had they known the true facts concerning 28 National Western's annuities, they would not have purchased them in the first place. *Nat'l Western*, 268 F.R.D. at 666.

 and did not overcome plaintiffs': (1) disclosure statements, signed at the time of purchase, attesting that they "reviewed" and "understand" the brochure;9 (ii) signed declarations stating that had they known the truth about their annuities, they would not have purchased them; 10 and (iii) other deposition testimony.

misrepresentations." Instead, there need only be "'some direct relation between the injury asserted and the injurious conduct alleged,'" i.e., causation. *Id.* at 654,658 (causation shown where plaintiffs' damages are "foreseeable and natural consequence" of RICO mail and wire fraud scheme). The Plaintiffs argue, and the Court agrees, that they have adequately established causation through: 1) the signed disclosure statements requiring that investors review and understand NWL's written sales materials; (2) the "prominent" nature of NWL's misrepresentations; and (3) Plaintiffs' declarations stating that they relied upon the misrepresentations.

The Court finds NWL's argument that Plaintiffs' have failed to demonstrate any injury equally unpersuasive. NWL's argues that in order to fulfill the injury requirement under RICO, plaintiffs must prove a "concrete financial loss."[11]  However, RICO damages can be established where "plaintiffs actually made money, but less money than they would have absent defendants' conduct." *Nat'l Western*, 268 F.R.D. at 666 ("injury and loss here are determinable by comparing actual returns to the returns which would have been achieved had the alleged misrepresentations been true") (citing *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002)).

The evidence relied upon by Plaintiffs'- the diminished earnings of the Plaintiffs' annuities allegedly caused  by NWL's unlawful scheme to misrepresent the bonus and upfront sales charges - establishes a RICO injury. *Nat'l Western*, 268 F.R.D. at 667; *Mendoza*, 301 F.3d at 1168-72. Plaintiffs have provided sufficient evidence of diminished returns for a rational jury to conclude that Plaintiffs suffered concrete injuries within the meaning of RICO. Furthermore, the Court finds that Plaintiffs' have demonstrate that the injuries alleged flow directly from the alleged misrepresentations and are therefore arguably sufficient to constitute a RICO injury. *Nat'l Western*, 268 F.R.D. at 666 (injury "directly related to the alleged misrepresentation[s]"). Since Plaintiffs have established a direct link between the injury suffered by the class and the misrepresentations, summary judgment must be DENIED.

### II.  Plaintiffs' State Law Claims

---

[11] *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008), citing 22 *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785-87 (9th Cir. 1992); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 226 (2d Cir. 2008).

05cv1018

1    NWL argues that because the Plaintiffs' claims under California law are based on the same

2    underlying facts and theories as their RICO claims, the Plaintiffs cannot raise a genuine issue of

3    material fact as to any of these claims, they should similarly be dismissed.  However, as set forth above,

4    the Court finds: 1) that there are genuine disputes of material fact exist precluding summary judgment of

5    the Plaintiffs RICO claims; 2) that the Plaintiffs have provided sufficient evidence of "injury in fact" to

6    establish their UCL and False Advertising claims; and 3) that the Plaintiffs have provided sufficient

7    evidence of the alleged affirmative misrepresentations to establish their Elder Abuse and Unjust

8    Enrichment claims.  Based upon the foregoing, NWL's motion for summary judgment on the Plaintiffs'

9    state law claims is DENIED.

10                                        ***Conclusion***

11    For the reasons set forth above, Defendant's motion for summary judgment is DENIED.  The

12    Plaintiffs' motion, Doc. No. 274, to exclude the declaration of Craig Merrill in support of Defendant's

13    motion for summary judgment is DENIED AS MOOT.

14    IT IS SO ORDERED.

15

16    DATED:  February 10, 2012

17    _____

18    Hon. Anthony J. Battaglia
      U.S. District Judge

19

20

21

22

23

24

25

26

27

28

11                                                                                  05cv1018